United States v. Turkett, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed. 246 [1981].

Congress was completely aware of its technical responsibilities when it sought to legislate. United States v. Buckner, 894 F.2d 975, 979 n. 9 (8th Cir. 1990) (reporting on the testimony of Dr. Byck before Congress). And it had just dealt with yuppie coca tea on the same basis. Crack cocaine was a substance requiring scheduling under law.

C. Crack Cocaine Has Never Been Scheduled:

In that 1986 legislative session, no less than five bills were introduced for the purposes of crimninalizing the trafficking in crack cocaine. Each and every one of them began with a provision to legislatively schedule crack cocaine in Schedule I. The language of Senator Chiles' bill is representative:[6]

> Sec. 2   ADDITION OF COCAINE IN ANY BASE FORM AS SCHEDULE I CONTROLLED SUBSTANCE.
>
> Schedule I of section 202(c) of the Controlled Substance Act (21 U.S.C. § 812(c) is amended by adding at the end of the following:
>
> (d)   cocaine in any base form.

It is known that this aspect of their Bills encountered difficulty in the Judiciary Committees, where the Department of Justice seats a permanent representative. In the legislation which emerged from Committee, all the scheduling provisions had been completely stricken and it was never discussed again.

---

[6] The universal proposal to schedule crack cocaine in each of these bills reflects the belief of Congress that it was dealing with a brand new drug substance. If legislators thought crack was already scheduled, they would have been asking to "re-schedule" from Schedule II to Schedule I for reasoning similar to that for the forms of methamphetamine described earlier in these arguments.

16

The Appellant accuses that there was improper ulterior motive behind this development. In the same legislative session, these same Committees had just been told by the Justice Department that it was essential that they schedule "coca tea" because otherwise no one could be prosecuted for an uncontrolled substance. It is incomprehensible that the Committees could now be told that the differences between cocaine and crack cocaine were too legally insignificant, compared to the differences between coca leaves and coca tea, to warrant any scheduling consideration. The only discernible difference between the coca tea and crack situations research is that thousands of crack defendants had already been convicted for "crack" as an uncontrolled substance, while all the coca tea users had escaped prosecution. If crack were now scheduled, such action would reveal all those prior convictions illegal.

The Appellant submits that the possibility of this development was perceived as so politically embarrassing that a conscious decision was made to avoid the problem. Instead the Justice Department pursued the cover up which has resulted in this pleading. Your Appellant and his affiants have never been able to obtain the Judiciary Committee records and will ask for discovery on this aspect of the issue. Regardless, today the known facts and the absence of candor serve as persuasive evidence that the scheduling of crack cocaine was a gross dereliction of C.S.A. due process. There is no honest or statable reason otherwise why Congress would not have fulfilled the intentions of all five sponsors of legislation to make crack a Schedule I controlled substance.

17

The criminal caselaw certainly supports the fact that crack is not somehow alternately scheduled. This total void in the statutory law-making has best been described in United States v. Deisch:

> "Neither `cocaine base' nor `crack cocaine' nor any equivalent term is mentioned in section 841(a) or in any of the controlled substance schedules; nor is there anything in any of the controlled substances schedules which can be said to describe `cocaine base' (or `crack cocaine') but not `cocaine,' or to describe `cocaine base' (or `crack cocaine') as a discrete variety or type of cocaine."

20 F.3d 130, 149 (5th Cir. 1994). No governmental entity that knows the hidden problems can risk defining crack cocaine. Once defined, the differences from "ordinary" cocaine would be available for evaluation to the statutory criteria. The complete lack of definition produces another constitutional defect. Vide infra.

As in the case of Spain, Emerson, and Caudle, the failure to schedule crack cocaine is fatal to the subject matter jurisdiction of the indictment to this case. The identification of crack cocaine as the corpus dilecti is an essential element of the indictment, and now it cannot honestly be maintained that crack cocaine was ever controlled. In United States v. Lewis, 40 F.3d 1325 (1st Cir. 1994), a defendant complained that naming "crack cocaine" or "cocaine base" in the indictment read to the jury was unconstitutionally inflammatory given the public perception of a societal menace derived from these drugs. And so he moved to strike the words "cocaine base." The First Circuit, however,

found that these newly created drug offenses required proof of different elements than those for an ordinary cocaine offense.

> "Here, the term `cocaine base' was neither irrelevant nor unfairly prejudicial. The indictment served as notice to Lewis of the nature of the charges against him. Indeed, identifying the substance as cocaine base was an essential element of the Government's case against Lewis."

Id., 40 F.3d at 1346.


D. This Conviction Cannot Sustained:

In Appellant's case, the Government made a charging decision and asked the Grand Jury to indict him for "crack cocaine" trafficking offenses. That substance was then and remains today an uncontrolled substance not subject to prosecution. The conviction and sentence of the Defendant for possession with intent to distribute and conspiracy to distribute crack cocaine/cocaine base must be vacated and the indictment dismissed.

II. **THE COCAINE BASE / CRACK COCAINE SENTENCING CLAUSES, 21 U.S.C. §§ 841(b)(1)(A)(iii) AND (B)(iii), ARE CONSTITUTIONALLY VOID FOR VAGUENESS:**

In passing the Narcotics Penalties Act of 1986, Congress foresook any pretense of the law in this genre being legislated with the precision demanded by the Controlled Substances Act. Touby, supra; Flemming, supra. It is a further extension of the defects to the legislative thinking that Congress would seek to especially penalize a substance it hadn't even defined. This last deficiency is fatal to the establishment of a separate penalty subsection for the undefined substance.

Neither crack cocaine nor cocaine base is named on the Schedules of Controlled Substances. Diesch, supra. Although cocaine is included on Schedule II, numerous courts presented with the question of whether cocaine base is equivalent to cocaine powder for purpose of 21 U.S.C. § 841(b)(1)(A)(ii) and (B)(ii) have held that the two substances are distinct:

> "If we were to read clause (ii) to include cocaine base because cocaine base is pure cocaine, we would of necessity have to conclude that there was no purpose for including clause (iii) in that statute since that clause also addresses cocaine base... [I]f clause (iii) isolates crack cocaine for special treatment, it is illogical to read clause (ii) also to include crack cocaine."

United States v. Fisher, 58 F.3d 96, 99 (4th Cir. 1995), cert. denied, 516 U.S. 927 [1995].

20

Explaining the legislative history, the Fisher Court also stated that "one purpose of [the] Narcotics Penalties and Enforcement Act of 1986 was to recognize crack as a distinct and separate drug from cocaine hydrochloride." Id. (citing 132 Cong. Rec. S 14, 288 daily ed., September 30, 1986). This statement of purpose has now been uniformly claimed as correct across all the Circuits. E.g., United States v. Edwards, 98 F.3d 1364, 1369 (D.C. Cir. 1996), cert. denied, 117 S.Ct. 1347 [1997]; United States v. Camilo, 71 F.3d 984, 990 (1st Cir. 1994), cert. denied, 116 S.Ct. 1555 [1996]; United States v. Reddick, 90 F.3d 1276, 1282 (7th Cir. 1996); United States v. Sloan, 97 F.3d 1378, 1381-84 (11th Cir. 1996), reversing United States v. Davis, 864 F.Supp 1303, 1305 (N.D.Gs. 1995) (discussing treatment to be afforded scientific definitions of cocaine). The point had also been made much earlier. United States v. Cyrus, 890 F.2d 1245, 1248 (D.C. Cir. 1989) and United States v. Buckner, 894 F.2d 975, 978-80 (8th Cir. 1990).

But because the legal definition of all scheduled cocaines is contained in Schedule II(a)(4) of 21 U.S.C. § 812 and because the language of §§ 841(b)(1)(A)(ii) and (B)(ii) is virtually identical to the language in the (a)(4) Schedule,[7] the subclause

---

[7] Section 841(b)(1)(A)(ii) and (B)(ii) penalize offenses involving:

>    (I) Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;
>
>    (II)    cocaine, its salts, optical and geometrical isomers, and salts of isomers;
>
>    (III)   ecgonine, its derivatives, their salts, isomers, and salts of isomers;
>
>    (IV)    any compound, mixture, or preparation which contains any quanitty of any of the substances referred to in the subclauses (I) through (III).

The definition of cocaine in Schedule II of 21 U.S.C. § 812© is virtually identical to that above, word for word. The definition of cocaine in 21 C.F.R. § 1308.12 (b)(4) differs only semantically:

(ii) penalty statutes must include cocaine base if that cocaine is scheduled. There is no legal principle by which to read the same language as inclusive in the scheduling case but exclusive in the penalty case. Sutherland's Statutory Construction, § 45. If it was Congress' intent to set up separate penalty classes from one scheduling, it acted ineffectually toward doing so. Cocaine base cannot be read out of subclause (ii) without effectively gutting it from the list of scheduled cocaines also.

The irrationality of having done so anyway produces a Constitutionally-dimensioned vagueness problem. Apologists for the statutory scheme appeal to Congressional intent to distinguish cocaine hydrochloride from crack cocaine and give crack cocaine the higher penalty. But this intent is insufficient legal reason in light of the statutory construction provided. The problem clearly arises from having attempted to maintain the fiction that crack cocaine did not require scheduling. As a result, Congress could not even define crack cocaine for others to categorize it later or create any exhaustive categorization of cocaines for itself. The resulting construct is inherently vague for having crack cocaine in two different penalty sections.

This argument is clearly a different argument than the scientific definitions argument presented in Davis. The laws, 21

---

> Coca leaves [ ] and any salt, compound, derivative or preparation of coca
> Leaves (including cocaine [ ] and ecgonine [ ] and their salts, isomers, derivatives, and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coa leaves or extractions of coca leaves which extractions do not contain cocaine or or ecgonine.

It would be irrational for the U.S.Code and the C.F.R. to mean different things.

U.S.C. §§ 841(b)(1)(A)(iii) and (B)(iii), as written, are ambiguous on their face for overlapping the jurisdiction of subsections (A)(ii) and (B)(ii). This dilemma cannot be resolved in the Government's favor either way. If either crack cocaine or free base are held to still be scheduled, then the Appellant asks by what rationale a defendant can be told he does not qualify to be sentenced under clause (ii) of the appropriate subsections to the Controlled Substances Act.

A defendant is entitled to know the meaning of the law from reading it, and it alone, without referral to congressional rhetoric or Newsweek. Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed. 903 [1983]. This statutory scheme fails to inform with the requisite constitutional clarity. Touby, supra; Flemming, supra; United States v. Mersky, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423 [1960] (high precision is demanded in administrative law-making to which penal consequences attach). And the affected defendants are entitled to the plain meaning of the statutory language that they find. Salinas v. United States, 522 U.S., 118 S.Ct. 469, 139 L.Ed.2d 352 [1997] (it is not allowed to circumvent statutory text by pointing to legislative history). It is undeniable that clause (ii) has been used to previously sentence crack cocaine offenses and does not today exclude crack cocaine from its potential sentencing calculus. The rule of lenity dictates that it be used if applicable, and it is. United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 [1971]. These principles are hornbook law and reveal this ambiguity to be plain error.

Nor is this purely a question of due process notice. <u>Grayned</u> v. <u>City</u> <u>of</u> <u>Rockford</u>, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 [1984] (the void for vagueness doctrine serves at least three constitutional purposes). The first, of course, was notice (<u>supra</u>); but the second is equally important:

> "Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates policy matters to policemen, judges, and juries for resolution on an <u>ad</u> <u>hoc</u> and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

<u>Grayned</u>, 408 U.S. at 108, 33 L.Ed.2d at 227. This concern has not proved to be a hollow hypothetical in the crack cocaine context. Criminal transcripts are replete with occasions of police stating, "it looked like crack cocaine to me" and "I can't tell you what it is, but I know it when I see it." Even chemical professionals have testified that the purported legal distinctions are meaningless to them. E.g., see <u>Davis</u>, <u>supra</u>. And

> "Third, but related, where a vague statute `abut[s] upon sensitive areas of First Amendment freedoms, `it operates to inhibit the exercise of those freedoms.' Uncertain meanings inevitably lead citizens to `steer far wider of the unlawful zone...' than if the boundaries of the forbidden areas were clearly marked."

<u>Grayned</u>, 408 U.S. at 109, 33 L.Ed.2d at 228. Nor has this concern been hollow either. While not impinging on a First Amendment right in all the senses of First Amendment freedoms, such as freedom of speech, the use of an altered state impinges on rights of expression and sometimes religion. The drafters of

24

the Controlled Substances Act were exceptionally mindful that they were treading on the privileges to which a Citizen was permitted to subject his or her own body. Extraordinarily harsh penalties are being asked of persons who have only facilitated the ultimate use of the crack cocaine by making it available. No one has ever had to "push" crack cocaine on the public.

As an extension of this First Amendment concern for fundamental rights, the Appellant submits that "freedom from confinement" is a primary and persistent concern owing to the finite limits to a human lifetime. See Sherry F. Colb, "Freedom From Incarceration: Why Is This Right Different From All Other Rights?," 69 N.Y.U.L.Rev. 781 (Oct/Nov 1994). While society has now been conditioned to accept sentences that are draconian from drug control laws, the validity of imposing extremist measures must still measure up to standards of notice and proper overall policy control. These are the nature of the protections embodied in the void for vagueness doctrine as the minimal due process protection owed an accused or convicted citizen.

**NOTHING** that is scheduled cocaine is outside the defining ambit of §§ 841(b)(1)(A)(ii) and (B)(ii) because before 1986 they were intentionally made the same. The Petitioner cannot properly be blamed for some substance alleged to reside in subsections (A)(iii) and (B)(iii) that is not even defined. He was entitled to far better conduct of office than the Congress afforded the Narcotics Penalties Act. Regardless, as the Eleventh Circuit commented in deciding the issue of chemical definitions, the rule of lenity applies "only if [trafficking in cocaine base/crack co-

caine were] arguably subject to § 841(b)'s and [U.S.S.G.] § 2D1.1(c)'s lower tier of penalties." United States v. Sloan, 97 F.3d at 1383. The Petitioner has now made the required showing and this Court should vacate the sentence imposed and remand with directions to sentence this case pursuant to clause (ii).

_____
MIGUEL SANTIAGO, PRO SE