IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MIGUEL SANTIAGO,
    Petitioner

v.

UNITED STATES OF AMERICA,
    Respondent

04 CV 30108-MAP

## DEFENDANT'S TRAVERSE TO THE GOVERNMENT RESPONSE

The Petitioner is in receipt of the January 23 decision transcript of the suppression motions; he did not receive the transcript of the actual testimony of the arresting/searching officers. Where the relevant testimonies are summarized to the understanding of the Court as of January 23, 2003, Mr. Santiago makes his Traverse to the Government *in seriatim* and asks that these circumstances for his pleading be acknowledged.

I. Background

The Government's brief summary of the travel of this case is correct. The Petitioner only notes that appeal of the denial of the suppression motions on the then existent record would have been lacking in the critical facts necessary to a correct decision.

The Memorandum supporting the AO-243 forms are paginated in small Roman numeral for the prefatory remarks, then sequentially for the body of the claims. The actual crack cocaine scheduling/vagueness arguments, as explained in the body, are included as an attachment where they were prepared quite some time ago and are being re-presented for the reasons explained on Petition.

II. Facts

The Government version of events appears to be substantially correct. Most of the events described do not relate to the issues in this Petition. The Petitioner would mention again that Mr. Ruiz was arrested <u>before</u> 4:00 P.M., allowing agents ample time to obtain a warrant.

The Government description of the arrest is completely generic and does not provide any details. It inverts the order of arrest and search. Mr. Santiago submits that he was arrested when he was thrown to the ground from his car. Response, p. 7. If someone said he was under arrest, he does not recall.

The description of the consensual search of 48 Putnam Circle is also generic and passing with respect to the critical entry phase. The fruits of the search are not in controversy.

III. Santiago's § 2255 Claims Have Been Waived

The Government is aware that Mr. Santiago brings his Fourth Amendment grounds for relief under the mantle of the ineffective assistance of trial counsel. Section 2255 is the forum for all claims of ineffectiveness. <u>Massaro</u> v. <u>United States</u>, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d [2003].

Furthermore, the honest resolution of whether this arrest and subsequent searches were constitutional requires additional facts that ineffective counsel never introduced into the record. For example, the Defendant never told his version of the events. The Government's legal criticism of the Defendant's failure to directly appeal the denial of suppression is therefore really a red herring argument. It invites Mr. Santiago to fail in the appellate court because of the deficient record so it can tell <u>this</u> Court that the

2

issue has been twice denied and the Defendant is just a poor loser. The current presentation of the issue has been the only viable opportunity since trial to make the full argument necessary.

Mr. Santiago uses the same standard as the Government (Response at pages 8-9) and does show cause for not appealing, even if that fate was probably a naive accident at the time. Mr. Etkin presented the wrong facial issue to this Court; the written submissions treat the question as one of a Terry stop. Mr. Mastroianni never amended the written submissions and, judging by the summary that Mr. Santiago's Next Friend has read, ad libbed his way through the suppression hearing with cross-examination only. He failed to get the critical timeline and the order of events into the record, such that the Government still panders its actions as exigent and as a search preceeding arrest. The performance of counsel is the objective factor external to the defense of the Petitioner, which fatally prejudiced the factual basis for the suppression motions.

For the otherwise guilty defendant, the suppression motion is the only line of defense. But vindication through exercise of a constitutional right is absolute, irrespective of guilt. Throwing the suppression is tantamount to throwing a trial. Coleman v. Thompson, 501 U.S. 722, 753 [1991].

Mr. Santiago made a full presentation of these same standards in his own words. Motion Brief, pp. 1-2. He has met them both to the Government explication and to his own. Ironically, it is the Government which must now rely on procedural bar to reaching the merits in order to salvage this conviction.

In footnote 3, page 9, of the Response, the Government expresses confusion over whether the failure to schedule crack cocaine and

3

constitutional void for vagueness arguments are also presented for the ineffective assistance of counsel. It is the Petitioner's belief that counsel should always evaluate a drug crime with respect to the historical cases like Spain, Caudle, etc., cited in the scheduling argument. Taking scheduling for granted no matter what changes are happening in law is objectively irresponsible. However, Mr. Santiago has already pointed out that in a Third Circuit presentation of these argument, that Circuit held that the question was jurisdictional in nature, for which no showing of cause or prejudice is required to raise the ground for relief on collateral review. See Croussett reference. Thus, on either basis, this Court should reach the merits of the issues.

IV. No Hearing Is Necessary

Appealing to history, the Government invokes the four day hearing which the Petitioner is only able to review in summary fashion. If the Court is required to rely on some unrebutted testimony of the officers, then Mr. Santiago either has to be afforded the opportunity to refute by pleading or by evidentiary hearing.

V. Allegations Regarding Violations Of Sixth Amendment Right To Effective Assistance Of Counsel

Again, in summary fashion the Government states the Defendant's two basic claims.

The Government understates the nature of the Petitioner's suppression claim, however, taking advantage of the record unavailable to Mr. Santiago when he was required to draft his pleadings. The suppression hearing moved from the grounds raised in the formal motion to the legality of the arrest because the Government was forced to raise alternate rationales.

4

The scheduling issue has two consequences. The first is direct and the second is derivative. If crack cocaine is not scheduled, it may not be prosecuted as its own separate entity. And, even if it is somehow held to be scheduled, in the correct vision of "penalty facts," subsections 841(b)(1)(A)(iii) and (B)(iii) are void for vagueness.

At this point, the Government presentation describes the ineffectiveness standard per Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994). Mr. Santiago does not disagree with the standard and his claims still meet the required showing after the Government objections.

A. Suppression

The Defendant maintains that Mr. Etkin's Terry stop argument was wrong as a matter of obvious facts applied to Fourth Amendment law. This Court agreed. Suppression Transcript, Jan. 23, 2003, p. 41. This arrest must survive de novo review for the Government to prevail. And the transcript supplied to the Petitioner is still arguing "Terry" in the final pages of argument. The paper pleadings that the Petitioner retains do not make the essential argument that, if this is a probable cause arrest, it was done in total disregard of the warrant requirement. So two issues are in play: (1) reassessment of whether there was probable cause under the now fuller record for this full arrest (or only for a search) (Petition, p. 6), and (2) whether police were constitutionally delict in their failure to seek an arrest or search warrant. This ground for relief has not been addressed by the Government. And Mr. Santiago makes his rebuttal from the best materials available to him.

Mr. Mastroianni stressed the legality of the consensual search

5

at 48 Putnam Avenue. Suppression, p. 37 ("My strongest argument obviously is on this issue."). He then argued that the collective facts were too non-incriminatory to justify a Terry stop.

Mr. Newhouse attempted to preserve all options. The comment, "If you have probable cause, then you have the lesser standard which is the reasonable suspicion," is a non-sequitor to the controversy. Suppression, p. 41. Reasonable suspicion allows a Terry stop, but being thrown to the ground is not a Terry stop. Authorities did have reasonable suspicion that there might be cocaine in the car, but police went far beyond the actions allowed by reasonable suspicion. This is why the order in which events matured becomes critical to the proper legal finding. Had police acted in Terry fashion, Mr. Santiago would have no case. But because they acted in gangbuster fashion, the Government has no case.

At this juncture the suppression transcript becomes confusing as to who is speaking. The dialogue on page 42 supports what the Petitioner wants to say; but on page 43, the dialogue reverses the proper roles of probable cause and reasonable suspicion?

The Court clearly treats the event as a probable cause arrest. The sufficiency of collective knowlege would have been a direct appeal issue; however, the Court appears to have a milquetoast impression of how the arrest was effected; it hedges by making a Terry-like approach develop into greater probable cause (e.g., hand near opaque white bag). What really happened was a full-blown arrest conducted according to policy. The Government has not disputed the Petitioner's amplified version of events and honestly cannot.

The Government's position is on the horns of a dilemma. The Court's findings support a probable cause arrest, not ever a Terry

stop or a spontaneous exigent search. The search of the vehicle becomes a search incident to arrest or an inevitable discovery to arrest issue from inventory search. If this is a valid arrest, it becomes invalid for the deliberate failure to obtain an authorizing warrant in advance. Police had the option of requesting either a search or an arrest warrant well in advance of the events they were creating. There can be no honest claim that they were encountering any surprise; indeed, the essence of any warrant affidavit would have been the prediction that events would take place as they actually did.

So the Government cannot win even if the collective knowledge of police provides probable cause that a crime was being committed. Police had at least three and one-half hours available to seek the warrant and they arguably could have postponed still longer without any suspicion. The evening was still young (7:30 P.M.) when the arrest was made; any time up to 10:00 P.M. would probably have worked. And no one claims there couldn't be an excuse made to do the deal the next day during daylight, when police could better identify the subject's green eyes. There had to be a large number of police on overtime when they arrested Mr. Santiago. If that could be arranged, so too could a warrant.

Where the Government has not disputed the Defendant's additional facts and has not addressed the failure to obtain a warrant, the defense counsel to this case were clearly ineffective in presenting the vital facts and argument to this Court which would have decided this suppression for the Petitioner. The Writ should issue for Ground I.

B.  Scheduling/Voidness

Despite all the preamble explanation that Mr. Santiago presented to the scheduling argument, the Government uses purely semantic names to make the argument it wants. Foreigners who have reviewed this argument and Government Responses have commented that rebuttals have been superficial doubletalk. And the Response here is as well.

First, the Government approach conflates the chemical for the drug substance. It is "drugs" that are scheduled, not chemical structures. "Cocaine" the drug is scheduled because it was found to possess the abusive properties described under 21 U.S.C. §§ 811 and 812. That is why the Government's change of language in 1986 in order to include coca tea was a lying fraud on justice. Coca tea is a form of cocaine the chemical <u>not</u> possessing the characteristics that make it a drug of abuse. "Crack cocaine" the drug is a sublimed and partially decomposed cocaine with hundreds of "excipient ingredients" (<u>Generix</u>) (for example, excipient ammonia) that is medically and legally distinct from "cocaine" the drug.

The Government wants the issue treated purely as a legal question that degenerates into semantics alone, where it dictates a beginning at Schedule II(a)(4). The true requirement is to begin at 21 U.S.C. § 321(g).

The Petitioner has also shown that the division of the 401 Statute into 21 U.S.C. § 841(a) and (b) is a clerical creation, not any deliberate act of Congress. See Petition, p. 14, discussing Judge Becker's legislative history research. Section 841(b) is <u>not</u> simply "establishing penalties for certain specific controlled substances (presumably already scheduled) including cocaine and cocaine base," at least not for cocaine base/crack cocaine sublimed into the head. Response, p. 13. Subsection (b) is naming specific sub-

stances that must be demonstrated to be scheduled in their own right. Some admittedly are. But the <u>drug</u> that is crack cocaine has never been legally evaluated for the "penalty element" that Congress wanted to attach to it.

If the Government wants to rely purely on legality using § 812 as the starting point, then it faces the vagueness problem. <u>United States</u> v. <u>Robinson</u>, is saying there is no <u>substantive</u> difference between the free base cocaine of the schedule and crack; there is only one substance. So there should only be one penalty.

As usual, the Government does not dare speak one word in substantive disagreement with the comprehensive historical and legal argument made from the first principle protections of the Controlled Substances Act. The real issue is whether this argument is wrong. American justice has become such a lie that the answer to that question has been made political. Regardless, the Defendant prays for a decision based on the argument he actually made, not the Mark Twain spin provided by the Government.

CONCLUSION

Mr. Santiago has refuted all the arguments put forth by the Government as objection to his Motion To Vacate Sentence. Therefore, as Petitioner he prays that the Writ will be granted for both of the grounds for relief.

Respectfully submitted,

*Miguel Santiago*
Miguel Santiago, Pro Se
F.C.I. Fort Dix, Unit 5751
P.O. Box 2000
Fort Dix, New Jersey 08640-0902

9

CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true copy of the above Traverse To Government Response to:

>Todd E. Newhouse, Esquire, A.U.S.A.
>Office of United States Attorney
>1550 main Street
>Springfield, Massachusetts 01103

on the 7th day of October, 2004, postage prepaid.

*Miguel Santiago* (signature)
Miguel Santiago

September 30, 2004

10