IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MIGUEL SANTIAGO,
    Petitioner

v.

                                          04-CV-2292
                         C. A. No.  05 - 1089

                                               04 CV 30108-MAP

UNITED STATES OF AMERICA,
    Respondent

PETITION FOR CERTIFICATE OF APPEALABILITY

    Defendant/Petitioner, Miguel Santiago, Pro Se, respectfully seeks the issuance of a certificate of appealability for three issues in the denial of his § 2255 Motion:

> Whether The District Court Is Legally Wrong That The Arrest Of Mr. Santiago And The Subsequent Searches Were Per Se Constitutional:

> Whether The District Court Violated Mr. Santiago's Constitutional Right To Due Process By Disposing Of This § 2255 Motion Without An Evidentiary Hearing:

> Whether The District Court Committed Constitutional Error In Continuing To Equate The Scheduling Of Cocaine For That Of Crack Cocaine Where The Two Drugs Were Conclusively Shown On Petition To Be Two Legally Different Substances Per The Controlled Substance Act Definitions:

    The Court of Appeals staff has noted that the District Court has not denied a certificate; therefore, Mr. Santiago applies here.

    Mr. Santiago must show the denial of a constitutional right. 28 U.S.C. § 2255 (c)(2); Barefoot v. Estelle, 463 U.S. 880, 893 [1983];

citing <u>Steward</u> v. <u>Beto</u>, 454 F.2d 268, 270 n. 2 (5th Cir. 1970). The <u>Barefoot</u> Court defined the specific standard as follows:

> "In requiring a question of some substance, or a substantial showing of the denial of a federal right, obviously the petitioner need not show that he should prevail on the merit. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a deiferent manner; or that the questions are adequate to deserve encouragement to proceed further."

<u>Barefoot</u>, 463 U.S. at 893 n. 4, citing <u>Gordon</u> v. <u>Willis</u>, 516 F.Supp. 911, 913 (N.D. Ga. 1990) (internal quotations omitted).

The Petitioner also qualifies under the more recent summary formulation of the <u>Barefoot</u> standard that "reasonable jurists would find the district court's assessment of the Constitutional claims debatable." <u>Slack</u> v. <u>McDaniel</u>, 529 U.S. 479, 120 S.Ct. 1595, 1604 [2001].

PRELIMINARY MATTER

The § 2255 Application was argued in the District Court first without the transcripts of the suppression hearings. For the Traverse, the Petitioner received the transcript of the final day of hearing, but not the December 8 -- January 8 hearings. Those transcripts were received during the preparation of this Petition For Certificate of Appealability.

With the availability of the full record, Mr. Santiago is able to more completely reference this Petition than he was during the § 2255 Motion adjudication.

2

SUPPLEMENTAL FACTUAL BACKGROUND FROM THE RECORD

It becomes clear from the reading of the December 8 transcript that police did not have good identification on their target-subject. Officer Shankweiler testified that, even with binnoculars, he could not see who was in the driver's seat at the meeting between Ruiz and his presumed supplier on March 6 at a little before eight o'clock in the evening. December 8 Hearing, pp. 14-19. There was no exchange witnessed (p. 30) and Agent Olsen admits that Ruiz had been surveilled from 3:00 P.M. on "going to different places in Holyoke and Springfield really, at least <u>in the end</u>, didn't seem to have any relationship to the drug deal eventually being concluded." December 8 Hearing, pp. 37-38. So while Ruiz drove from his last meeting directly to the deal, the deal had been prearranged for that time and place and the drugs could have come from anywhere.

The police were therefore relying almost exclusively on Ruiz' claim that his last meeting of the day had been with his supplier when they decided to arrest the driver of a burgundy Pontiac sedan. As discussed in earlier pleadings, police did not investigate the identification of the subject any deeper. When agents set up the arrest, it was so dark that Agent Olsen admits he could not tell what the target-subject was wearing, only that he was male. December 18 Hearing, p. 13. And he could not tell if the subject was carrying anything. <u>Id</u>., p. 16. There was nothing inherent about the circumstances surrounding the anticipated arrest that added an iota of suspicion; it was purely a person going to a meeting <u>or</u> going somewhere for independent reasons.

3

The arrest was conditioned only on the vehicle stopping at or near the anticipated location. Officer Shankweiler testified that, although he was the only officer to have seen the alleged supplier, he did not call the arrest. December 18 Hearing, p. 10. The arrest took place in a common area where there were always people "coming and going" around the housing projects. Id., p. 19. There is no doubt but that police fully intended to arrest. With guns drawn. Id., p. 20-21. With loud shouting. Ibid. With the target presumed armed. Id., p. 33. Lieutenant Geier acknowledges that Mr. Santiago was placed on the ground when he was "extracted" from his vehicle. Id., p. 117; id. (Shankweiler), p. 21.

The whole operation was a planned event. The arrest was set up beforehand. December 8 Hearing, p. 57. The Springfield Police Department was called for additional manpower. Ibid. The search was simultaneous with the arrest. December 18 Hearing, p. 25-26 (Lt. Geier went in the passenger side simultaneously, turns off the ignition, and came out with the bag).

I.  A CERTIFICATE SHOULD ISSUE TO DECIDE WHETHER THE DISTRICT COURT WAS LEGALLY WRONG IN HOLDING THAT THE ARREST OF MR. SANTIAGO AND THE SUBSEQUENT SEARCHES WERE CONSTITUTIONAL:

This case got off to a misleading start based on the Defendant only having a partial record. The motions of defense counsel and objections of the Government toward suppression were the only hard documents in hand. As the Courts should now be aware, the Bureau of Prisons restricts people from possessing their own P.S.I. Reports. And, while they permit people to come look at them, that is a meaningless gesture for people like Mr. Santiago who do not read English.

The original pleadings appeared to treat this case as a <u>Terry</u> stop controversy; Mr. Santiago's personal description of how he was treated prompted his next friends to treat the whole affair as a planned arrest. It was not clear on what basis the District Court had denied the Motions To Suppress. But it is now clear that the Court also considered Mr. Santiago's treatment as an arrest and the searches subsequent to that arrest legal. ("Subsequent" is also not entirely accurate, since the evidence is undisputed that Lieutenant Geier seized the bag from the automobile while other officers were restraining Mr. Santiago.)

Mr. Santiago would have taken appeal if he had been aware that appeal is possible. The Court uses the failure to appeal as a procedural bar to his raising the claim on the merits alone. Memorandum and Order, p. 2. This is not the simplistic issue that it appears and a certificate should issue to resolve the responsibility of layman litigants in these circumstances.

First, Mr. Santiago is not the person pleading, nor is his a person capable of pleading. He is exclusively a Spanish speaking individual who has relied exclusively on the papers which he managed to salvage from his District Court proceedings. His next friends believed that this was a plea agreement case; it is only with the Court's Order that everyone here has become aware that appeal had been an option. Regardless, however, there are complications which militate for addressing this as an ineffectiveness of counsel claim.

The problem has arisen that where a defendant raises a review of the suppression question on direct appeal, he is accused on § 2255 of "issue preclusion." In other words, that Santiago forfeited his opportunity to make expanded argument on collateral review. E.g., United States v. Brooks, 125 F.3d 484, 485 (7th Cir. 1997); United States v. Rosario, 234 F.3d 347, 352 (7th Cir. 2000). Had this been a further review of an appealed issue, the Government argument that it was a "rehash" of matters argued and decided on direct review is a foregone conclusion.

But the motions and memoranda in hand demonstrate that this was an improvidently argued issue in the first instance. Then, when the correct "arrest" grounds for the search were delineated during the actual suppression hearings, the defense never raised the failure to obtain a warrant ground for relief in the District Court. Thus, Mr. Santiago would in both instances be arguing from a disadvantaged position on direct review: a less than factually complete record, erroneous legal starting point, and plain error for his most compelling issue. This would be patently unfair.

6

Instead, it is the Defendant's considered belief that on review the courts should hold him to less stringent standards. Salerno v. United States, 870 F.Supp. 549 (E.D.N.Y. 1994) (litigant who may have been inappropriately deprived of direct review should have the § 2255 motion reviewed to a less stringent standard). If anything, this Court should treat the search and seizure issue as improvidently not being appealed by ineffective defense counsel. This certificate should not be denied, but rather expanded, for the additional ineffectiveness of counsel.

On the merits, the District has again vacillated back to the Terry stop approach to addressing this search and seizure. In no way, Petitioner submits, should jurists consider these events a Terry stop; the District Court appears to have relied on the original pleadings as the Petitioner did at the outset and the length of the proceedings. But the length of proceedings cannot substitute for the correct legal ideas and arguments.

Mr. Santiago has made a prima facie showing that agents possessed sufficient time to obtain a warrant and could orchestrate their arrest around a warrant requirement; but they deliberately avoided seeking any warrant. This was no controlled buy, where a warrant could be obviated. It was a clandestinely intercepted delivery where the police themselves express the possibility of danger. Furthermore, it took place in a heavily populated area next to a housing project, where people routinely are coming and going. Even with the deficient record to argue from, Mr. Santiago made the legal point that avoidance of the warrant requirement for no good reason was a major issue overlooked by ineffective counsel.

This is an unaddressed point in the District Court decision and a certificate should issue in order to address it. Both Mr. Santiago's concerns and the concerns of the public at large are affected by the Government's policy on conducting these investigations.

Naturally, Mr. Santiago disagrees with the District Court's assessment of whether probable cause existed to arrest him. He points to the other travels of Mr. Ruiz on the afternoon of the 16th to point out that the "burgundy Pontiac" was not the only possible source of the cocaine. Police took what amounted to a calculated gamble; it is instructive to imagine what the consequences would be had the gamble been wrong. On that basis, Mr. Santiago submits that different jurists could view the search and seizure with greater weight for the public safety and decide this issue differently. A certificate should issue to properly assess those values.

Finally, to this section, the landscape of sentencing jurisprudence under the Federal Sentencing Guidelines is changed to the effect that evidence which bears on facts constituting elements must be subject to full constitutional protection. Thus, the admissibility of the seizures toward sentencing, which was previously a non-issue, is now fairly on the table.

In an appendix, Mr. Santiago demonstrates that Booker, Part I, is ineluctably retroactive because it produces substantive and structural consequences. And he argues that Booker, Part I, is inherently ex post facto under the fourth category of Calder v. Bull. Thus, it is not possible to dismiss this appeal on the theory that Mr. Santiago would plead guilty anyway.

8

II.  A CERTIFICATE SHOULD ISSUE TO RESOLVE WHETHER THIS § 2255 APLICATION SHOULD HAVE RECEIVED AN EVIDENTIARY HEARING:

The Petitioner was required to plead all his substantive submissions until now without the benefit of the full record of this suppression. Unless those additional facts are somehow credited in Issue I, the review that this ground for relief has received will be suffering from an unconstitutional distortion of the facts because this case did not receive a full hearing.

In the more traditional sense, Mr. Santiago's ground for relief warranted a full and fair hearing because of his allegation that police had deliberately avoided the warrant requirement. Nothing in the extant record allows the Court to properly review this claim. The Government defense has been to completely ignore the issue on Response; it hopes to win by neglect. The Petitioner submits that he believes he can show a pattern of deliberate avoidance of warrants by the Agents in this region of the State. But more specifically, he believes he can show by hearing that the agents acted with total disregard toward obtaining any warrant when they planned his arrest with seventeen officers. Just because Agents planned to pull him from his automobile instead of out of his home does not absolve them from seeking judicial permission. Payton v. New York, 445 U.S. 573 [1980] (discussing considerations which militate against making warrantless arrests of suspects in their homes).

The files and records of this case do not show why police did not obtain necessary warrants or the existence of any exceptions

9

upon which police could be obviously relying. Section 2255 requires a hearing in such circumstances <u>whenever</u> the files and records of the case as they stand demonstrate conclusively that the Defendant must lose. <u>Fontaine</u> v. <u>United States</u>, 411 U.S. 213 [1973] (<u>per curiam</u>); <u>Machibroda</u> v. <u>United States</u>, 368 U.S. 487, 494-95 [1962] (same).

This Circuit has implemented the <u>Fontaine</u> and <u>Machibroda</u> holdings by declaring that a movant is not automatically entitled to an evidentiary hearing, but must show by a preponderance of the evidence that he is entitled to relief, if his claim is true, and that he is entitled to an evidentiary hearing. <u>United States</u> v. <u>Mack</u>, 635 F.2d 20, 26-27 (1st Cir. 1980), citing <u>United States</u> v. <u>DiCarlo</u>, 575 F.2d at 954. To any extent that this requirement is a dilution of the <u>Machibroda</u> standard, Mr. Santiago naturally takes exception. However, it is his position that he has made any showing required by the First Circuit interpretation anyway and should have received a hearing.

Mr. Santiago has established that police orchestrated all the proximate events leading up to his arrest; beginning days in advance, they knew they would want to arrest "him." When the occasion to actually arrest arose, Mr. Santiago has shown from the record that agents enlisted the Springfield Police Deparmtent Drug task force and allowed the time for them to get organized. He has also shown that there is not a single mention in the existent record addressing the police thinking about obtaining an arrest or search warrant. This warrantless arrest is thus far judicially

sanctioned without any evaluation of the background leading up to the actual arrest except the probable cause to arrest Mr. Santiago. The Petitioner is also skeptical that the probable cause was adequate for police to do what they actually did; however, the material question for evidentiary hearing was why police who believed they had the probable cause if the circumstances developed as predicted did not obtain a warrant based on those circumstances happening.

The Government has not provided any affidavit or explanation of why police took no steps to obtain a warrant. The Government hopes that by not "feeding into" the controversy the controversy can be swept under the rug. But the failure to answer should have been construed against the Government. Sims v. Georgia, 389 U.S. 404 [1967] (if a party has evidence on an issue, but fails to present it, the reviewing court must construe the evidence, were it presented, to be for the opposing party when it renders any decision on the merits of the controversy).

Well, the Petitioner did not win on his rather obvious warrant requirement argument. Either he should win from the obvious omission to seek the warrant or the Court should have held a hearing to allow the agents to confabulate their excuses and have them cross-examined.

A certificate should issue because this is a policy-issue of serious public importance. Police are acting without regard to lawful controls on the implied policy that it is easier to obtain judicial forgiveness and to obtain judicial permission. United States v. Morgan, 743 F.2d 1158, 1163 (6th Cir. 1984) (police not free to create exigent circumstances).

11

III. A CERTIFICATE SHOULD ISSUE TO RESOLVE WHETHER CRACK COCAINE MUST BE SCHEDULED AS A SEPARATE CONTROLLED SUBSTANCE OR OTHERWISE PROSECUTION AND PUNISHMENT FOR THE SUBSTANCE IS A NULLITY:

The District Court has denied Mr. Santiago's claim that crack cocaine should be a scheduled substance in its own right in a perfunctory manner. Mr. Santiago has investigated United States v. Robinson, 144 F.3d 104, 108 (1st Cir. 1999), and the reasoning in Robinson is nothing to compare the depth of the arguments on this Petition with. This treatment is so clearly for the benefit of preserving the status quo that it gives the appearance that the result wanted is to dictate the rule of law.

Cocaine is scheduled, . . . as cocaine. Scheduling gives only the jurisdiction to treat cocaine as cocaine, not as any other drug. Crack cocaine satisfies every definitional requisite for being a "new drug" compared to the cocaine of scheduling. 21 U.S.C. § 321(g) and Generix Drug Corporation. When jurisdiction is challenged, as it is here, it must be proved. It is a deficiency of legal review not to have justified the alleged scheduling against each of the Petitioner's challenges that crack is not scheduled. Only scheduling can give the jurisdiction to treat crack cocaine as an element of a controlled substances offense.

A certificate must issue or the Courts will be presumed to be totally dishonest in this jurisprudence and not deserving of any further obedience to laws that are traitorous to the United States Constitution.

12

CONCLUSION

It is often said, "what price for an idea?" The District Court has substituted the zealousness of counsel for the competence to which Mr. Santiago was entitled in the protection of his Fourth Amendment rights. And the Courts should be very emphatic that police not conflate the exigency that is created at a controlled substance buy-bust with just plain seizure/arrests. Unless these questions receive legal treatment, and published opinions, there will naturally be the progressive dilution of the protection outright. Won't a whole category of Fourth Amendment protection be lost if police can perform arrests like Mr. Santiago's without even consulting a magistrate?

Defendants are apparently by-themselves over the automatic blessing that the nation's crack cocaine law receives in criminal courts. The lies, the deliberate deception for political purpose, the defectiveness of refusing to schedule crack in light of the true definitions and operating principles of the Controlled Substances Act, and the inability of the Government to defend on any quarter of the arguments, all get judicially blessed for the result produced. If defendants are going down in flames even over the most thoroughly researched and supported arguments, drawn from first principles that leaders proclaim as the bedrock of the nation, by the arguments just being belittled and ignored, then the system doesn't deserve respect any longer.

The Cocaine Scheduling Argument is admittedly based on historical data and eternal arguments. It can therefore be settled

conclusively at any time. If the District Court is standing on "precedent," albeit it based on underanalysis and changing the questions presented, it should endorse a certificate as a matter of conscience. Otherwise, the failure to obtain review on the basis of the most thorough arguments is a fraud on justice to all crack cocaine affected defendants.

Wherefore, for each of the issues presented, Mr. Santiago prays that a certificate will issue.

Respectfully submitted,

*Miguel Santiago*
Miguel Santiago, Pro Se
F.C.I. Fort Dix, Unit 5751
P.O. Box 2000
Fort Dix, New Jersey 08640-0902


CERTIFICATE OF SERVICE

I hereby certify that I have mailed a true copy of the above Petition For Certificate Of Appealability to:

Todd E. Newhouse, Esquire, A.U.S.A.
Office of United States Attorney
1550 Main Street
Springfield, Massachusetts 01103

on the 3rd day of March, 2005, postage prepaid.

*Miguel Santiago*
Miguel Santiago

14